1
2
3
4
5
6                           **UNITED STATES DISTRICT COURT**
7                              **DISTRICT OF NEVADA**
8
9
10   BALDOMERO VILLA and EDERLINDA               2:10-cv-02024-LDG-LRL
     VILLA;
11
              Plaintiffs,                        **ORDER**
12
13   v.
14   SILVER STATE FINANCIAL SERVICES,
     INC., et al.,
15
              Defendants.
16

17        Plaintiffs Baldomero and Ederlinda Villa filed this action in the Eighth Judicial District

18   Court of Nevada seeking damages and equitable relief arising from Defendants' attempts to

19   foreclose on one of two mortgages secured by Plaintiffs' home residence.  Defendants

20   subsequently removed the case to federal court (#1).  Now pending before the court are

21   Defendants' motion to dismiss (#5, opp'n #12, reply #13, joinder #44) and Plaintiffs' motion for

22   preliminary injunction (#19, opp'n #22, reply #23, supplemental mot. #28, supplemental opp'n

23   #30, supplemental reply #31, second supplemental motion #41, second supplemental opp'n #42).

24                                  **I. Background**

25        In January 2007, Plaintiffs purchased a home by borrowing approximately $1.46 million

26   from Silver State Mortgage ("Silver State") in the form of two secured mortgage loans.  The first

note, for $1,227,750, was secured by the first Silver State Deed of Trust, number 20070201-0003577 ("SSDOT-1").  This first deed lists Commonwealth Land Title Insurance Company as trustee and MERS as the beneficiary to act as the nominee for the lender and the lender's successors and assigns. The second note, for $230,000, was secured by the second Silver State Deed of Trust, number 20070201-0003578 ("SSDOT-2").  This second deed does not list a trustee.  Both deeds were recorded with the Clark County recorder on February 1, 2007.[1]

In March 2007, Silver State allegedly informed Plaintiffs that it was going out of business and that Meridias Capital Inc. ("Meridias") would act as Plaintiffs' new lender.  On March 29, 2007, Plaintiffs executed two new notes and deeds of trust with Meridias as lender for approximately $1.46 million.  The first note, for $1,227,750, was secured by the first Meridias Deed of Trust, number 20070412-0004383 ("MDOT-1").  The second note, for $230,000, was secured by the second Meridias Deed of Trust, number 20070412-0004384 ("MDOT-2").  These deeds list Fidelity National Title Agency of Nevada ("Fidelity") as trustee and Mortgage Electronic Registration Systems Inc. ("MERS") as the beneficiary to act as the nominee for the lender and the lender's successors and assigns.  Both deeds were recorded with the Clark County recorder on April 12, 2007.

On April 16, 2007, Plaintiffs allegedly received notification from Meridias that Chevy Chase Bank, MA ("CCB") would begin servicing Plaintiffs' mortgage loans on May 1, 2007.

---

[1]  "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack . S. Bay Beer Distibs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). Accordingly, the court takes judicial notice of the public records adduced by Defendants.

Plaintiffs allege that, in accordance with this notice, they began paying their mortgage payments to CCB.

The Silver State deeds of trust were fully reconveyed in January 2008.  On January 22, 2008, Washington Mutual Bank, FA ("WAMU") recorded a Substitution of Trustee and Full Reconveyance, whereby WAMU substituted California Reconveyance Company as the new trustee under SSDOT-2, and California Reconveyance Company, acting as successor trustee under the deed, fully reconveyed "without warranty to the person or persons legally entitled thereto all estate now held by it under said Deed of Trust."[2]  On January 24, 2008, MERS similarly recorded a Substitution of Trustee and Full Reconveyance as to SSDOT-1, that named California Reconveyance Company as the new trustee under SSDOT-1, and California Reconveyance Company, acting as successor trustee under the deed, fully reconveyed "without warranty to the person or persons legally entitled thereto all estate now held by it under said Deed of Trust."

Plaintiffs stopped paying their mortgage payments in early 2008.  On June 10, 2008, Cal-Western Reconveyance Corporation ("Cal-Western"), as an agent for MERS, recorded a Notice of Default.  MERS then formally substituted Cal-Western as trustee under MDOT-1 on August 27, 2008.[3]  On September 15, 2008, Cal-Western, then acting as substituted trustee under MDOT-1, issued a Notice of Trustee's Sale to take place on October 1, 2008.  This sale, however, was postponed.  On May 1, 2009, Cal-Western issued another Notice of Trustee's Sale, this time to take place on May 18, 2009.  The sale was again postponed.

_____

[2] Also on January 22, WAMU recorded an Affidavit of Missing Assignment of Mortgage/Deed of Trust, indicating that the Assignment of Mortgage/Deed of Trust for SSDOT-2 from Silver State to WAMU was not recorded and was then unobtainable.

[3] Although this Substitution of Trustee was signed on June 6, 2008, the substitution was not recorded until August 28, 2008.

Plaintiffs filed for Chapter 7 bankruptcy on June 2, 2009.  Plaintiffs listed CCB as the secured creditor on the real property and indicated their intention to "surrender" the property. Plaintiffs did not contest the validity of these secured claims.

On July 19, 2009, Plaintiffs allegedly received a Notice of Transfer of Servicing Rights from Capital One, NA ("Capital One") indicating that Capital One would begin servicing Plaintiffs' mortgage.

On July 29, 2009, MERS executed an Assignment of Deed of Trust that granted, assigned, and transferred to US Bank, NA ("US Bank") as trustee for CCB Libor Series 2007-2 Trust "all beneficial interest under" MDOT-1.[4]  On August 6, 2009, MERS similarly executed an Assignment of Deed of Trust that granted, assigned, and transferred to CCB "all beneficial interest under" MDOT-2.  Both assignments were recorded on November 17, 2009.

After having been assigned "all beneficial interest" under the Meridias deeds by the execution of the above assignments, both US Bank and CCB moved the bankruptcy court for relief from the automatic stay, US Bank on September 2, and CCB on October, 22, 2009.  The bankruptcy court granted both parties' motions for relief from the automatic stay, on October 22 and December 14, 2009, respectively.

Plaintiffs received a Chapter 7 discharge on September 24, 2009.

On October 1, 2009, Plaintiffs filed suit in the Eighth Judicial District Court of Nevada against Meridias, Fidelity, Silver State, CCB, and MERS, alleging eight causes of action: (1) Defendants Lacks [sic] Legal Standing to Conduct and Enforce a Non-Judicial Foreclosure, (2) Fraudulent Misrepresentation (against MERS), (3) Fraudulent Misrepresentation (against all

---

[4] MERS again executed an Assignment of Deed of Trust granting, assigning, and transferring to US Bank as trustee for CCB Libor Series 2007-2 Trust "all beneficial interest under" MDOT-1. This second, operatively identical assignment was executed on December 30, 2009, and recorded on January 14, 2010.

defendants), (4) Fraudulent Concealment, (5) Usury and Fraud, (6) Unconscionability, (7) Unjust Enrichment and Civil Conspiracy, and (8) Quiet Title.  Plaintiffs then filed a motion for preliminary injunctive relief and, and at some point, a motion to stay the action pending bankruptcy relief.

On December 1, 2009, Plaintiffs filed for Chapter 13 bankruptcy.

On January 25, 2010, the state court denied Plaintiffs' motion for injunctive relief and motion to stay the action pending bankruptcy relief, and the bankruptcy court dismissed Plaintiffs' Chapter 13 case without discharge on February 1, 2010.

On March 11, 2010, Cal-Western issued a Notice of Trustee's Sale on MDOT-1 to take place on March 21, but the sale was postponed.

On May 26, 2010, MERS filed a motion to dismiss Plaintiffs' state court claims against it. Plaintiffs failed to file an opposition to MERS' Motion and failed to appear at argument on that motion.  The court granted MERS' motion on July 1, and ordered that "all claims against MERS are hereby dismissed with prejudice."  The remainder of Plaintiffs' case was also dismissed at some point, but it is not clear when or under what rule that dismissal occurred, although Plaintiffs suggest that the case was "closed for failure to prosecute."  Pls.' Opp'n to Defs.' Mot. to Dismiss 12, Jan. 6, 2011, ECF No. 12.

On September 30, 2010, Cal-Western issued another Notice of Trustee's Sale on MDOT-1 to take place on October 21, 2010.  On October 7, 2010, however, Quality Loan Service Corporation ("Quality"), acting as an agent for the US Bank, the ostensible beneficiary under MDOT-1, issued a new Notice of Default.

Plaintiffs filed the present action on October 15, 2010, in the Eighth Judicial District Court of Nevada, against Silver State, Meridias, WAMU, Fidelity, California Reconveyance Company, Cal-Western, CCB, US Bank, Capitol One, and MERS.  Plaintiffs, however, have since named

Quality as an additional defendant and voluntarily dismissed Silver State, Meridias, WAMU, Fidelity, and California Reconveyance Company.  Plaintiffs allege eight "causes of action" against the Defendants: (1) a declaration that the Silver State deed is void as a matter of law, (2) quiet title, (3) a declaration that Defendants lack standing to foreclose, (4) fraudulent misrepresentation, (5) fraudulent concealment, (6) unjust enrichment and civil conspiracy, (7) tortuous conversion, and (8) declaratory and injunctive relief.

On or about November 2, 2010, US Bank substituted Quality as successor trustee under MDOT-1, and Cal-Western rescinded the Notice of Default previously filed on June 10, 2008.

This action was removed to federal court on November 11, 2010.

On January 12, 2011, Quality issued a Notice of Trustee's Sale to take place on February 1. In response to this notice of sale, Plaintiffs moved this court for either a TRO or a preliminary injunction on January 27.  On January 31, the court granted Plaintiffs' motion for a TRO until this court could conduct a hearing on Plaintiffs' motion for preliminary injunction and instructed Plaintiffs to file a separate motion for preliminary injunction with supporting points and authorities.

On March 1, 2011, this court held a hearing on Plaintiffs' preliminary injunction motion. At that hearing, the court ordered Plaintiffs to file a bond equaling three months' mortgage payments and ordered supplemental briefing on Plaintiffs' motion in anticipation of a continued hearing.  The Plaintiffs posted the necessary bond, the parties have subsequently submitted their supplemental briefs.

## II. Analysis

Defendants have moved this court to dismiss each of Plaintiffs' claims.  Defendants argue that Plaintiffs are barred from bringing the present suit due to judicial estoppel arising out of Plaintiffs' previous bankruptcy proceedings and due to claim and/or issue preclusion arising out of

Plaintiffs' previous state court suit.  Defendants also argue that, in any event, Plaintiffs' Complaint fails to state a valid claim for relief.  Plaintiffs, however, have moved this court for a preliminary injunction and maintain that they have demonstrated a likelihood of success on the merits.  The court will now address the parties' arguments.

**A. Motion to Dismiss**[5]

Defendants' motion to dismiss, brought pursuant to Rule 12(b)(6), challenges whether the Plaintiffs' Complaint states "a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  In ruling upon this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  As summarized by the Supreme Court, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citations omitted).  In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving party."  *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

---

[5] The court granted Plaintiffs' motion to amend their Complaint to add Quality as a defendant on January 31, 2011 (#16).  Plaintiffs voluntarily dismissed Silver State, Meridias, WAMU, Fidelity, and California Reconveyance Corporation on February 4, 2011 (#20), and the court granted CCB and Capitol One's motion to dismiss on March 22, 2011 (#40).  The court, therefore, will only analyze Plaintiffs' Complaint as to the remaining Defendants: Cal-Western, US Bank, MERS, and Quality.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### i. Judicial Estoppel & Claim/Issue Preclusion

Defendants argue that Plaintiffs lack standing to pursue their claims because Plaintiffs failed to contest the debts listed on their bankruptcy debt schedules and failed to disclose any positive claims arising out of those debts in their bankruptcy proceedings. Defendants argue that, even if Plaintiffs once had valid claims, those claims now belong to the bankruptcy estate. Defendants also argue that Plaintiffs are judicially estopped from claiming any title or right in the property because of representations made within their bankruptcy proceedings. "In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (citing *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992)). In light of Plaintiffs' failure to disclose any claims or contest any debts, the Plaintiffs are estopped from alleging claims related to their mortgage and deed obligations that arose prior to, or during, their bankruptcy proceedings. *See Hamilton*, 270 F.3d at 784 ("Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset."); *Ngo Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1030-31 (N.D. Cal. 2010) (holding that judicial estoppel barred the plaintiffs' wrongful foreclosure and related claims because plaintiffs failed to contest the debts or disclose any potential claims in a previous bankruptcy proceeding); *HPG Corp. v. Aurora Loan Servs.*, LLC, 436 B.R. 569, 576-79 (E.D. Cal. 2010) (same).

Defendants also argue that, because the state court dismissed Plaintiffs' previous suit based on many of the same causes of action, Plaintiffs' current claims are barred under the doctrines of claim or issue preclusion. Claim preclusion applies when "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or

8

1    any part of them that were or could have been brought in the first case." *Five Star Capital Corp.*

2    *v. Ruby*, 194 P.3d 709, 713 (Nev. 2008).  For issue preclusion to apply, "(1) the issue decided in

3    the prior litigation must be identical to the issue presented in the current action; (2) the initial

4    ruling must have been on the merits and have become final; (3) the party against whom the

5    judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4)

6    the issue was actually and necessarily litigated." *Id.* (internal quotation marks, ellipsis, and

7    citation omitted).  "[W]hile claim preclusion can apply to all claims that were or could have been

8    raised in the initial case, issue preclusion only applies to issues that were actually and necessarily

9    litigated and on which there was a final decision on the merits." *Id.*

10          Plaintiffs argue that their current Complaint is not barred by this previous dismissal

11   because the current suit involves additional parties, "the claims in the present action are based on

12   fraudulent conveyances and transfers of the subject loan and not the origination of the subject loan

13   agreements," and the previous dismissal only applied to Plaintiffs' claims against MERS.

14   However, in light of the previous dismissal, Plaintiffs also concede that they may have improperly

15   named MERS and have expressed willingness to agree to the stipulated dismissal of MERS.

16   Although the current suit involves some additional parties and some additional or different claims,

17   the previous dismissal of MERS constituted an adjudication on the merits under Nevada law.  *See*

18   *Five Star Capital Corp.*, 194 P.3d at 715.  Furthermore, MERS' previous motion to dismiss was

19   specifically based on issues upon which many of Plaintiffs' current claims necessarily rely.

20   Contrary to Plaintiffs' suggestion that the previous Complaint was based solely on origination

21   issues, Plaintiffs specifically alleged that no entity had standing to foreclose due to MERS'

22   inability to properly appoint a trustee and due to securitization and the holder in due course

23   doctrine.  Therefore, in light of Plaintiffs' failure to contest any debts or disclose any claims in

24   their bankruptcy proceedings and the dismissal of Plaintiffs' previous suit against MERS,

25

26

9

1    Plaintiffs are likely barred from bringing many of their current claims or allegations.  In any event,

2    however, Plaintiffs' claims fail for the reasons stated below.

3                    **ii. Claims One, Two, & Three  – Silver State Deed Invalid; Quiet Title;**

4                        **Defendants Lack Standing to Foreclose**

5            Plaintiffs seek a judicial declaration that the "primary and secondary subject loan

6    agreements entered into with Defendant Silver as the beneficiary" and "the Deeds of Trust from

7    Silver in [sic] are void due to omission of a trustee on the [second] Deed of Trust."  Compl. ¶¶ 67;

8    66.  The failure to appoint a trustee on the SSDOT-2 does not absolve the underlying mortgage

9    note, nor does it invalidate a different, properly executed deed of trust (SSDOT-1).  In any event,

10   however, Plaintiffs executed new notes and deeds of trust with Meridias a few months later

11   (MDOT-1 and MDOT-2), and it is upon these Meridias deeds that Defendants have sought to

12   foreclose.  Therefore, the court will dismiss Plaintiffs' first claim.

13           Plaintiffs also seek to quiet title by obtaining a judicial declaration that "the title to the real

14   property is vested in Plaintiffs and Plaintiffs alone."  Compl. ¶ 85.  "An action to quiet title is an

15   equitable proceeding in which a party seeks to settle a dispute over ownership of property or to

16   remove a cloud upon his title to the property."  *Anderson v. Deutsche Bank Nat'l Trust Co.*,  No.

17   2:10-CV-1443 JCM (PAL), 2010 WL 4386958, at *4 (D. Nev. Oct 29, 2010) (citing *MacDonald*

18   *v. Krause,* 362 P.2d 724 (Nev. 1961)).  Ironically, Plaintiffs allege that "[t]he basis of [their]

19   interest in title is a Deed of Trust from Defendants" that Plaintiffs have also asked this court to

20   declare "void ab initio."  Compl. ¶¶ 73; 63-70.  Even disregarding this contradiction, Plaintiffs

21   have failed to allege facts sufficient for a claim of quiet title.  Furthermore, a widely accepted rule

22   in such actions is that the party must tender any outstanding loan amount prior to seeking equitable

23   relief.  *See, e.g.*, *Anderson*, 2010 WL 4386958, at *5; *Robins v. Wolf Firm*, No. 2:10-cv-0424-

24   RLH-PAL, 2010 WL 2817202, at *3 (D. Nev. July 15, 2010); *Simon v. Bank of Am.*, No. 10-cv-

25   00300-GMN-LRL, 2010 WL 2609436, at *12-13 (D. Nev. June 23, 2010); *Velasquez v. HSBC*

26

                                                    10

1   *Mortg. Servs.*, No. 2:09-cv-00784-KJD-LRL, 2009 WL 2338852, at \*9-10 (D. Nev. July 24,

2   2009).  Plaintiffs have failed to allege that they are not in default on their loans or that they have

3   made an offer of tender.  For these reasons and the reasons stated below, Plaintiffs have failed to

4   state a claim for quiet title.

5          Plaintiffs also seek a declaration that no Defendant has standing to foreclose.  Under

6   Nevada law, the foreclosure process is commenced by the recording of a notice of default by the

7   beneficiary, successor in interest of the beneficiary, or trustee.  NRS § 107.080(2)(c).  After at

8   least three months have elapsed, the trustee or other person authorized to make the sale under the

9   terms of the trust deed or transfer in trust shall give notice in accordance with the posting

10  requirements for residential foreclosures.  *Id.* § 107.080(4).  A foreclosure sale may be declared

11  void if the trustee or other person authorized to make the sale did not substantially comply with

12  the foreclosure statutes.  *Id.* § 107.080(5).  Here, Quality, acting as agent for US Bank, the

13  ostensible beneficiary, issued a Notice of Default for MDOT-1 on October 7, 2010.  US Bank then

14  substituted Quality as successor trustee under MDOT-1 on or about November 2, 2010.  On

15  January 14, 2011, Quality issued a Notice of Trustee's Sale.

16         Plaintiffs allege and argue that no Defendant has standing to foreclose because of the

17  general invalidity of the securization process, because none of the Defendants have demonstrated

18  that they hold the underlying mortgage note, because US Bank has failed to demonstrate that it is

19  the beneficiary under MDOT-1, and, consequently, because Quality was not properly substituted

20  by US Bank as the successor trustee under MDOT-1.  Securitization alone does not prevent non-

21  judicial foreclosure.  *See, e.g.*, *Chavez v. Cal. Reconveyance Co.*, No. 2:10–cv–00325–RLH–LRL,

22  2010 WL 2545006, at \*2 (D. Nev. June 18, 2010) ("NRS 107.080 does not forbid the

23  securitization of a loan. The alleged securitization of Plaintiffs' loan did not invalidate the Deed of

24  Trust, create a requirement of judicial foreclosure, or prevent Defendants from being holders in

25  due course.").  Plaintiffs' allegation that foreclosure is improper because Defendants have failed to

26

demonstrate that they hold the note fails because "defendants do not need to produce the note to the property in order to proceed with a non judicial foreclosure." *Clingman v. Somy*, No. 2:10-CV-1834 JCM (LRL), 2011 WL 383951, at *2 (D. Nev. Feb. 3, 2011) (quoting *Urbina v. Homeview Lending, Inc.*, 681 F. Supp. 2d 1254, 1258 (D. Nev. 2009)). "To the contrary, the case law within this district holds that the Nevada law governing nonjudicial foreclosure, NRS § 107.080, does not require a lender to produce the original note or prove its status as a real party in interest, holder in due course, current holder of the note, nominee of the current holder of the note, or any other synonymous status as a prerequisite to nonjudicial foreclosure proceedings." *Kwok v. Recontrust Company, N.A.*, No. 2:09-cv-2298-RLH-LRL, 2010 WL 4810704, at *4 (D. Nev. Nov. 19, 2010); *see also Ritter v. Countrywide Home Loans, Inc.*, No. 2:10-cv-00634-RLH-RJJ, 2010 WL 3829378, at *3 (D. Nev. Sept. 24, 2010) ("[T]he court has consistently held that NRS § 107.080 does not require MERS or any other similar entity to show it is the real party in interest to pursue nonjudicial foreclosure actions."). Assuming US Bank properly acquired beneficial interest under MDOT-1, the notice of default, issued by Quality as an agent for US Bank, and the notice of trustee's sale, issued by Quality as substituted trustee under MODT-1, are apparently valid under Nevada statutes, and Plaintiffs have failed to allege any cognizable defect. *See, e.g.*, *Karl v. Quality Loan Serv. Corp.*, --- F. Supp. 2d ---, 2010 WL 5464812, at *5 (D. Nev. Dec. 13, 2010); *Berilo v. HSBC Mortg. Corp.*, *USA*, No. 2:09-cv-02353-RLH-PAL, 2010 WL 2667218, at *4 (D. Nev. 2010) ("[N]othing prevents an authorized agent from recording a notice of default. Nor does Nevada law require a substitution of trustee be recorded prior to a notice of default."). Plaintiffs, however, argue that US Bank could not have acquired beneficial interest under MDOT-1 from MERS because MERS "does not possess the legal authority to assign beneficial interest in the [MDOT-1]." Pls.' Second Supplemental Brief 4, ECF No. 41.[6] Plaintiffs' claims fail because,

---

[6] Although not relevant to the current Notice of Default and Notice of Trustee's Sale, Plaintiffs also argue that MERS does not have standing to foreclose or to appoint a successor trustee. These arguments, however, lack merit. *See, e.g.*, *Smith v. Cmty. Lending, Inc.*, --- F. Supp. 2d ---, 2011 WL

as noted above, a party need not prove its "status as a prerequisite to nonjudicial foreclosure proceedings." *Kwok*, 2010 WL 4810704, at *4; *see Ritter*, 2010 WL 3829378, at *3.  However, insofar as Plaintiffs suggest that US Bank necessarily lacks authority to foreclose under NRS § 107.080(2)(c) because MERS cannot assign any interest under MDOT-1 to US Bank, Plaintiffs claims also fail.  Plaintiffs correctly observe that "MERS does not have the ability to transfer the interest in the loan without more evidence of its agency on behalf of [the original lender] . . . than being named as nominee on the [deed of trust]." *Vega v. CTX Mortgage Co., LLC*, --- F. Supp. 2d ---, 2011 WL 192514, at *1 (D. Nev. Jan. 19, 2011).[7]  The MDOT-1, however, also indicates:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument.

1127046, at *2 (D. Nev. March 29, 2011) (holding that language in a deed of trust identical to language in MDOT-1 "indicates that not only the trustee, as is the custom, but also MERS under this deed of trust, may initiate a foreclosure"); *Codilla v. CTX Mortg. Co., LLC*, No. 2:10-cv-01469-RLH-PAL, 2011 WL 673753, at *4 (D. Nev. Feb. 17, 2011)(citing *Weingartner v. Chase Home Fin., LLC*, 702 F. Supp. 2d 1276, 1280 (D. Nev. 2010)) (holding that MERS, as "nominee" under the deed of trust, may properly designate a substitute trustee under the deed of trust); *Orzoff v. Mortg. Elec. Registrations Sys., Inc.*, No 2:08-cv-01512-RCJ-PA, 2009 WL 4643229, at *6-7 (D. Nev. Mar. 26, 2009) (rejecting the plaintiff's argument that MERS does not have standing as a nominee beneficiary in connection with a nonjudicial foreclosure proceeding under Nevada law).

     [7] This position, however, is based on the assumption that the Nevada Supreme Court would not adopt the Restatement (Third) of Property (Mortgages) § 5.4(a)-(b). Although a mortgage generally follows the note under the traditional rule, the Restatement (Third) of Property (Mortgages) § 5.4(a)-(b) proposes that the mortgage and the note are bound together as a matter of law and that transfer of either effectively transfers interests under both documents. *See Vega*, --- F. Supp. 2d ---, 2011 WL 192514, at *2-3. The adoption of § 5.4(a)-(b) would likely render moot Plaintiffs' entire assignment argument.  Although the Nevada Supreme Court has never explicitly adopted the traditional rule, it has adopted the Restatement (Third) of Property in other contexts. *See, e.g.*, *Glenbrook Club v. Match Point Props., LLC*, Nos. 49955, 50527, 2011 WL 846102, at *3 (Nev. Mar. 9, 2011) ("Our jurisprudence is in line with the Restatement (Third) of Property, and we see no reason to depart from it now.").  In any event, for the reasons stated below, Plaintiffs have failed to plead a successful claim under either rule.

MDOT-1 3; MDOT-2 2.  The court has already determined that this very language is "clear enough, in conjunction with the (improper) identification of MERS as the beneficiary, to indicate that the parties intended MERS would be able to transfer the beneficial interest in the underlying debt directly . . . it is even more clear that MERS may directly transfer the interest in the deed of trust itself . . . ." *Smith*, --- F. Supp. 2d ---, 2011 WL 1127046, at *2; *cf. Claros v. LandAmerica Onestop, Inc.*, No. 2:10-cv-1788-RLH-PAL, 2011 WL 1401962, at *1 (D. Nev. Apr. 13, 2011) ("Then in February 2010, MERS transferred all beneficial interest under the deed of trust to Metlife").  As further noted by the court:

> Although MERS is not in fact the beneficiary, the attempt to name it as such coupled with the above-quoted language indicates an intent to give MERS the broadest possible agency on behalf of the owner of the beneficial interest in the underlying debt. Such agency would include the ability to sell the interest in the debt. The lender or its assigns (the true beneficiary) would of course have standing to challenge MERS' actions on its behalf—for example, if MERS absconded with the proceeds of such a sale—but no entity claiming to hold the underlying debt has made any such challenge here.

*Smith*, 2011 WL 1127046, at *2.  Accordingly, Plaintiffs have failed to allege any specific and colorable defect in the current foreclosure documents or proceedings prohibiting foreclosure under Nevada law.  Therefore, Plaintiffs' first, second, and third causes of action fail.

### iii. Claims Four & Five – Fraudulent Misrepresentation; Fraudulent Concealment

To state a fraudulent misrepresentation claim under Nevada law, a plaintiff must allege: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998) (citing *Bulman Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992) and *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975)).  With

14

respect to the false representation element, the suppression, omission, or concealment "of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist." *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007) (citation and internal quotation marks omitted).  Plaintiffs seem to allege that the remaining Defendants engaged in fraudulent misrepresentations by failing to inform Plaintiffs that they, the remaining Defendants, actually lack standing to foreclose.  Plaintiffs' vague claims fail to meet the heightened pleading standards for fraud-based claims.  *See* Fed. R. Civ. P 9(b).  More fundamentally, however, Plaintiffs have not identified any false representation, made by any remaining Defendant, upon which Plaintiffs relied to their detriment.  Furthermore, Plaintiffs have not alleged any realistically conceivable "damage . . . as a result of relying on the misrepresentation." *Barmettler*, 956 P.2d at 1386; *see Nelson*, 163 P.3d at 426 ("[T]his court has concluded that the damages alleged must be proximately caused by reliance on the original misrepresentation or omission.").  Plaintiffs have not tendered any payment to any remaining Defendant, nor have they relied on any of the remaining Defendants' allegedly fraudulent misrepresentations.  Therefore, Plaintiffs have failed to state a claims for fraudulent misrepresentation or concealment.

### iv. Claim Six – Unjust Enrichment and Civil Conspiracy

Plaintiffs claim that Defendants have been unjustly enriched at Plaintiffs' expense as a result of "charging a higher interest rate, fees, rebates, kickbacks, profits . . . and gains and fees unrelated to the settlement services provided at closing."  Compl. ¶ 157.  Under Nevada law, unjust enrichment occurs when "a person has and retains a benefit which in equity and good conscience belongs to another." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12*, 1975, 942 P.2d 182, 187 (Nev. 1997).  An action "based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.*  The doctrine of unjust enrichment thus only "applies to

situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Id.* (quoting 66 Am. Jur. 2d Restitution § 11 (1973)).

Plaintiffs' unjust enrichment claim fails because it is based upon express, written contracts. *See Duncan v. Countrywide Home Loans, Inc.*, No. 3:09-CV-00632, 2010 WL 5463863, at *6 (D. Nev. Dec. 28, 2010) ("Here, Plaintiffs specifically allege contracts. Those contracts, the notes and deeds of trust, specify their terms."); *Josephson v. EMC Mortg. Corp.*, No. 2:10-CV-336 JCM (PAL), 2010 WL 4810715, at *3 (D. Nev. Nov. 19, 2010) ("Since there is no dispute with regards to the existence of an expressed [sic] agreement, the loan, the plaintiffs are unable to claim unjust enrichment."); *Anderson*, 2010 WL 4386958, at *4 ("Here, the plaintiff's loan documents created the express, written agreement upon which the plaintiff bases a majority of his claims. Accordingly, there can be no agreement implied where there is an express agreement, and claim seven [unjust enrichment] is dismissed as to all defendants."). The notes and deeds of trust specifically "guided the interactions, obligations, and rights of the parties. As such, [Plaintiffs] cannot make a claim in equity for actions that are controlled by a contract to which they are parties." *Kenneweg v. Indymac Bank, FSB*, No. 3:10-cv-0475-LRH-RAM, 2011 WL 13853, at *4 (D. Nev. Jan. 4, 2011). Plaintiffs claim that they did not contract directly with certain Defendants contradicts their own allegations. *See* Compl. ¶ 139 ("Plaintiffs allege that they had oral and/or written agreements with all the Defendants and/or through the Promissory Note and Deed of Trust . . .."). Furthermore, such claims are inapposite, as previously observed by this court:

> In opposition, Contreras argues that there is no direct contract between himself and moving defendants as loan servicers and foreclosure trustees and that his claim for unjust enrichment is based on moving defendants [sic] retention of monetary benefits related to their services despite the lack of an express contract authorizing their retention of these benefits. However, the loan servicers and foreclosure trustees' rights to conduct a non judicial foreclosure and retain money [from] servicing the loan arise from the mortgage note, deed of trust, and subsequent transfers of rights

16

related to these documents to which Contreras is a party. Accordingly the court shall grant defendants' motion as to Contreras's claim for unjust enrichment.

*Contreras v. Master Fin., Inc.*, No. 3:10-cv-0477-LRH-VPC, 2010 WL 4608300, at *4 (D. Nev. Nov. 4, 2010).

Even more fundamentally, however, Plaintiffs' unjust enrichment claim fails because they cannot demonstrate that any remaining Defendant "is in possession of money or property which in good conscience and justice [it] should not retain." *Leasepartners Corp.*, 942 P.2d at 187 (quoting 66 Am. Jur. 2d Restitution § 11 (1973)). Plaintiffs have not paid their mortgage payments since early 2008, and Plaintiffs have apparently never paid any of the current Defendants. Therefore, Plaintiffs' unjust enrichment claim fails because, even if not barred by express contracts, Plaintiffs have not alleged facts sufficient to establish unjust enrichment.

Plaintiffs also claim that the remaining Defendants engaged in a civil conspiracy to defraud Plaintiffs. "Under Nevada law, an actionable civil conspiracy-to-defraud claim exists when there is (1) a conspiracy agreement; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff." *Goodwin v. Executive Tr. Servs., LLC*, 680 F. Supp. 2d 1244, 1254 (D. Nev. 2010) (citing *Jordan v. State ex rel. Dep't of Motor Vehicles and Pub. Safety*, 121 Nev. 44, 110 P.3d 30, 51 (2005)). "To allege a conspiracy to defraud, a complaint must meet the particularity requirements of Federal Rule of Civil Procedure 9(b) and inform each defendant of its actions that constituted joining the conspiracy." *Anderson*, 2010 WL 4386958, at *4; *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 642 (D. Nev. 2001). Allegations of conspiracy should be accompanied by the who, what, when, where, and how of the misconduct. *Ness v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Here, Plaintiffs allege that all "Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud Plaintiffs." Compl. ¶ 158. Plaintiffs'

17

conclusory allegations do not sufficiently allege a fraudulent conspiracy or ascribe any particular acts to any particular Defendant.  Furthermore, Plaintiffs cannot state a valid claim for civil conspiracy to defraud where Plaintiffs have failed to state any valid fraud-based cause of action. *See Jordan*, 110 P.3d at 51. ("[A]n underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud.").  Therefore, Plaintiffs have failed to state a valid civil conspiracy claim.

### v. Claim Seven – Tortious Conversion

Plaintiffs allege a claim of tortious conversion against MERS.  Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights."  *C. Multi-Family Dev., L.L.C. v. Crestdale Assoc., Ltd.*, 193 P.3d 536, 542-43 (Nev. 2008) (citation and internal quotation marks omitted).  Plaintiffs claim that Defendants "are perpetuating a tortuous [sic] act of [c]onversion by attempting to exercise the powers vested on the [Deeds of Trust]" and by "maliciously attempting to deprive the Plaintiff of ownership of the subject property."  Compl. ¶ 175; 181.  Even assuming the truth of Plaintiffs' allegations, however, they have failed to state a claim for conversion.  Plaintiffs have merely alleged that MERS has wrongfully attempted to exercise dominion over Plaintiffs' residence.  Plaintiffs' allegations fail to allege that Defendants have actually "exerted" any "distinct act of dominion," as apposed to mere attempt, or that any such act was wrongfully exerted over Plaintiffs' "personal property," as opposed to real property.  *See C. Multi-Family Dev., L.L.C.*, 193 P.3d at 542-43.  Therefore, Plaintiffs have failed to state a claim for conversion.

### vi. Claim Eight – Declaratory and Injunctive Relief

Plaintiffs' general claims for injunctive and declaratory relief are technically prayers for relief, not independent causes of action.  *See, e.g.*, *Anderson*, 2010 WL 4386958, at *5.

18

Consequently, these claims must fail because Plaintiffs have failed to state a valid claim upon which relief may be granted.  Therefore, Plaintiffs' claims for injunctive relief and declaratory relief are dismissed.

**B. Motion for Preliminary Injunction**

Plaintiffs have filed a motion for preliminary injunction.  An injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (citations and internal quotation marks omitted).  A party seeking a preliminary injunction must demonstrate (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest.  *Id.* (citing *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)).  As demonstrated above, Plaintiffs have failed to demonstrate any likelihood of success on the merits.  However, even if Plaintiffs had stated a valid claim sufficient to withstand Defendants' motion to dismiss, a preliminary injunction is nevertheless improper because Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of any claim.  Therefore, Plaintiffs' motion for preliminary injunction is denied.

### III. Conclusion

For the reasons stated herein,

THE COURT HEREBY ORDERS that Defendants' motion to dismiss and to expunge lis pendens (#5) is GRANTED.

THE COURT FURTHER ORDERS that Plaintiffs' motion for preliminary injunction (#19) is DENIED.

///

19

Dated this _19_ day of May, 2011.

_____
Lloyd D. George
United States District Judge

20